KATE L. WOOD, administratrix, *vs.* MASSACHUSETTS MUTUAL ACCIDENT ASSOCIATION.

Middlesex.   March 7, 8, 1899. — September 7, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Beneficiary Association — Certificate — Release — Fraud — Action.*

An association issued to A. a benefit certificate, entitling him to a certain weekly indemnity against loss of time "resulting from bodily injuries effected during the continuance of this certificate in force," and in case of his death resulting "from such injuries alone within ninety days," entitling his beneficiary to a sum named. While the certificate was in force, A. received bodily injuries and had medical attendance for several weeks. After his physician was discharged, and in consequence of an interview with the examining surgeon of the association, A. signed an application for a certain sum as indemnity, received a check from

the association for the amount, and signed a receipt releasing the association from "all claims and demands of every name and nature" under the certificate. The check was not drawn, and afterwards was tendered to the association. Subsequently, A. transacted some business and went on a long business trip, and upon his return became much worse and died within three months of receiving, and as the result of, the injuries above mentioned. About two weeks before his death, he returned the original certificate to the association, and sent with it a new application, and in return therefor the association, being ignorant of his changed condition, sent him a new certificate, which, although stated to be a substitute for the first one, was dated two years later, contained substantially the same provisions as the first one, and further provided that any certificates previously issued to A. "are hereby cancelled and rendered null and void." *Held*, that an action could not be maintained against the association upon either certificate.

CONTRACT, by the administratrix of the estate of Henry G. Wood, to recover $5,000 upon a benefit certificate issued by the defendant to the intestate. At the trial in the Superior Court, before *Hopkins*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

The case was argued at the bar in March, 1899, and afterwards was submitted on briefs to all the justices.

*A. E. Denison & C. H. Hanson*, for the defendant.

*P. H. Cooney*, (*J. E. Young* with him,) for the plaintiff.

LATHROP, J. On November 3, 1893, the defendant issued to the plaintiff's intestate, Henry G. Wood, a benefit certificate, so called, which certified that he was entitled to the benefits herein set forth: "In the sum named on the face of this certificate as weekly indemnity against actual loss of time, not exceeding fifty-two consecutive weeks, resulting from bodily injuries effected during the continuance of this certificate in force, through external, violent, and accidental means, which shall independently of all other causes immediately and continuously disable him from performing the duties of his occupation.

"Or if death shall result from such injuries alone within ninety days, this association will pay to his beneficiary or beneficiaries, if surviving, or if not surviving, to his legal representatives, five thousand dollars."

Then follows a clause beginning with the word "or," and making provision for the amount to be paid for various casualties, and immediately before the *in testimonium* clause is the following: "The association's liability on this certificate shall

not exceed the principal sum hereby insured, and the payment of a claim under any one of the benefits shall be payment in full for the accidental injury received."

On August 4, 1895, while the certificate was in force, Wood, while bathing at the seashore, sprained his ankle. He immediately returned to his home in Natick and placed himself under the medical care of Dr. Wright, who attended him from that time until September 10, 1895, at which time Dr. Wright testified that he did not require any further medical attendance, and that he was discharged from seeing him any more. On the thirteenth of the same month he was visited by Dr. West, the examining surgeon of the defendant. In consequence of what took place at that interview, Wood, on September 17, went to the office of the defendant and saw Dr. West, and said: "Doctor, I have thought the matter over, and I have come to the conclusion that I would be satisfied with six weeks pay at $25 a week." Dr. West drew up a paper, which was an application for indemnity, and which concluded as follows: "And I hereby further depose and say that in consequence of the above described accidental bodily injuries, I have been wholly disabled and prevented from attending to any of the duties of my occupation, from the 4 day of Aug. 1895, to the 17 day of Sept. 1895, for which actual loss of time I hereby claim indemnity at the rate of $25 per week, and which when paid shall be in full discharge of all claims which I have or may have on account of the personal injuries aforesaid." This release was read over to Wood, who also looked it over himself, and was then signed and sworn to.

The next day, September 18, the association sent a check to Wood for $150, together with a blank receipt, which was signed and returned by him. This receipt was as follows: "Received of Geo. E. McNeill, Treasurer, The Massachusetts Mutual Accident Association, one hundred and fifty dollars, and in consideration thereof I do hereby release and discharge the said association of and from all claims and demands of every name and nature, which I have against it, under and by virtue of its certificate No. 11,289." The check was not drawn, and it was tendered to the defendant before this action was brought, and again at the trial. The defendant declined to accept the same.

Subsequently to September 17, Wood twice visited his factory at Dover, New Hampshire, and twice visited his office in Boston, and then went with a partner of his to St. Louis, from which place he returned on September 28, and upon his return he was very much worse, and his leg was swollen, and he was in bed practically all the time from September 28 until he died on October 17, 1895.

Wood had no medical attendance from September 12 to September 28. Dr. Cook testified that he was called to attend Wood on September 28, 1895, and found him with his right leg moderately swelled between the knee and the ankle, and that there was tenderness under pressure along the location of certain veins leading from the foot to the knee and thence up the thigh. An autopsy revealed that the artery which leads from the heart to the lungs was blocked, or, in other words, that an embolism had formed that had gone through the heart and caused death; and that in his judgment Wood's death was the result of the injuries received on August 4. There was other medical testimony to the same effect.

On September 30, 1895, when the original certificate was returned by Wood to the defendant, he sent with it a new application, dated that day, and, in return therefor, the defendant, being ignorant of his changed condition, sent to him a new certificate.

In the application for the new certificate Wood stated : " I am in good health and in the possession of the full use of all my limbs and faculties. . . . I have never had nor am I subject to . . . any mental or bodily infirmity, injuries, or wounds which would retard recovery from or be aggravated by personal injuries. . . . I hereby accept the agreements on the back hereof as a part of this contract, and I agree to accept such certificate subject to all of its conditions, agreements, and provisions." One of the agreements indorsed on the back was : " That the benefits under this certificate shall not extend . . . to death, or any bodily injury happening directly or indirectly, wholly or in part, in consequence of any disease, previous wounds, or injuries."

The certificate issued on this application was headed : " This certificate is a substitute for the one issued Nov. 3, 1893," and it bore the same number. It was dated September 30, 1895, and

contained substantially the same provisions as the first, the material difference being that in the first the premium was twelve dollars a year, and in the second fifteen, and the limitation of the time within which the action could be brought, the old being six months, and the new one year.  The plaintiff is named as the beneficiary in each certificate.

It is difficult to determine from the declaration upon what theory the plaintiff sought to maintain her action, whether upon the first policy or the second.   It is clear that she could not recover upon both.   The judge who tried the case sought to solve the difficulty by instructing the jury that the second certificate took effect from November 3, 1893, and construed the certificate as giving the plaintiff the right to recover for the death in addition to the injuries.   If the second policy can be so construed, and dates from November 3, 1893, the question whether the first certificate was obtained from the plaintiff's intestate by fraud becomes entirely immaterial; yet this question was submitted to the jury.

Unless there was fraud, it is clear that the plaintiff cannot recover under the first certificate.   The intestate must be presumed to have read and understood the papers he signed.   *Androscoggin Bank* v. *Kimball,* 10 Cush. 373 ; *Grace* v. *Adams,* 100 Mass. 505 ; *Monitor Ins. Co.* v. *Buffum,* 115 Mass. 343 ; *Fonseca* v. *Cunard Steamship Co.* 153 Mass. 553.   By the receipt which the intestate gave, he released and discharged the defendant of and from all claims and demands which he had against it under and by virtue of the certificate in question.

We see no evidence of any fraud in the case.   So far as the evidence shows, the intestate was, save for a little lameness, to all appearances a well man, when he agreed to take his indemnity under the first certificate.   This was on September 17.   A week before, his own physician, who had attended him for a month, was discharged.   Fraud is not to be presumed, and the burden of proof is on the party who relies upon such a defence to allege and prove it.   *Beatty* v. *Fishel,* 100 Mass. 448, 449 ; *Hatch* v. *Bayley,* 12 Cush. 27.   In *Nelson* v. *Minneapolis Street Railway,* 61 Minn. 167, where a release of a claim for damages was signed by the plaintiff on the assurance of the defendant's physicians that her injuries were temporary, it was held that she could not

avoid the release on the ground that the physicians were mistaken. The court said: " There is not a particle of evidence tending to show that either of the physicians intentionally misrepresented the extent of plaintiff's injuries, or that the statements made by them were not their honest opinions, according to their best professional judgment, based on existing symptoms." In the case at bar there is no evidence of any false representations, or of wrong advice given in bad faith. The only ground on which the plaintiff seeks to show fraud is that Dr. West on September 13 gave Wood bad advice in telling him that he was wrong to be staying about home, and not going to his business; and that Dr. West knew better, as he was a man of large experience. If we assume that Dr. West was mistaken, and that Wood's attending physician was mistaken, we find no evidence of fraud. While the principal medical witness called by the plaintiff testified that there was no time in his judgment when Wood was not liable to the trouble which occurred and caused his death, he also testified that massage treatment and motion, as prescribed by Dr. Wright, and confirmed by Dr. West, were proper treatment for the sprain ; but not after a suspicion of thrombosis or diseased condition of the vein was discovered. There is not a particle of evidence in the case that there was a suspicion of such a condition existing until the intestate's return from St. Louis. Dr. Cahill, the other medical expert for the plaintiff, testified less strongly than Dr. Durrell, but he admitted that " a person using his ankle in the manner in which Capt. Wood used his by his attention to social duties and business, and going to Dover, New Hampshire, St. Louis and Boston, was aggravating to inflammation or disease of the veins, and would make him more liable to the state of affairs which was found, and the inflammation of the vein, or the 'phlebitis,' so called, was made worse by his going around, and that you would naturally expect such a result from such movements of the deceased."

Passing to the second policy. It is difficult to see upon what ground the judge in the court below instructed the jury that the second certificate was to be considered as running from November 3, 1893, the date of the first certificate. When the second certificate was issued, payment had been made by the company

for the injury received, a receipt in full had been signed by the intestate and sent to the defendant, and the first certificate had been surrendered.   While the second certificate is said to be a substitute for the one issued November 3, 1893, it does not purport to be more than a reinsurance at a different rate.   It looks entirely to the future.   It is dated September 30, 1895.   The letter from the defendant to the intestate, after referring to a misunderstanding as to the rating, continues: " Should you wish to have your insurance continue under this rating, please make out the enclosed application blank and return your certificate." It is to be noticed that this letter does not use the word "policy," or the word " certificate," before the word "continue," but the word " insurance."   The application for the certificate is dated September 20, 1895, and in it Wood agrees to keep it in force for at least a year, which must be construed to mean a year from the date of the certificate to be issued on the application then made.   The certificate, dated September 30, 1895, is against personal bodily injuries effected " during the continuance of this certificate," with this clause: " Or if death shall result from such injuries alone, within ninety days, this association will pay," etc. It further provides : " Any and all certificates which may have been previously issued to the above named benefit member are hereby cancelled and rendered null and void."

The case at bar differs from *Ford* v. *United States Accident Relief Co.* 148 Mass. 153, on which the plaintiff relies.   In that case the plaintiff received an injury, and on applying for indemnity was informed that he was not properly described as a merchant.   A new policy was issued to him, bearing the same date as the old, and describing him as a leather cutter and merchant; and the action was brought on the second policy.   The only questions decided were that the defendant had the right to issue a new policy to correct an error in the old policy ; and that the description of the plaintiff's occupation in the new policy would not entitle him to recover unless he showed a disability both as a leather cutter and as a merchant.

There are many other questions raised by the bill of exceptions; the most important of which is, whether, if the first certificate remained in force, the plaintiff could recover for the death benefit, after the intestate had elected to receive his disa-

bility benefit. But, in the view we take, it is unnecessary to consider this question and the other questions.

We are of opinion that on the evidence the plaintiff is not entitled to recover upon either certificate; and that the jury should have been instructed to return a verdict for the defendant, as requested in the first prayer for instructions.

*Exceptions sustained.*