ARCADE MALLEABLE IRON COMPANY *vs.* HARRY E. JENKS.

Worcester.   October 1, 1917. — January 4, 1918.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Frauds, Statute of.  Contract,* In writing.  *Evidence,* Extrinsic affecting writings.

In an action on an alleged guaranty by the defendant, one H E J, of the payment
for certain goods furnished by the plaintiff to a corporation, called the G C Co.,
of which the defendant was the treasurer, the statute of frauds was pleaded,
and the plaintiff to satisfy the statute relied on the following letter addressed to
the plaintiff: "I will personally see to it that your bill is met on the 15th of each
month. . . . Yours very truly, G C Co., By H E J."   There was evidence,
which had been admitted without objection, that the defendant had promised
orally to guarantee the account and that he had failed to answer a letter from
the plaintiff, written on receipt of the letter quoted above, stating, "We also
note that you will personally guarantee the account."   *Held,* that, even con-
sidering as extrinsic circumstances the oral promise and the unanswered letter,
neither of which was admissible in evidence, the alleged memorandum as matter
of law was not signed by the defendant and could not be found by a jury to
have been signed by him.

In the same case the plaintiff relied upon a letter signed by the defendant in a
subsequent correspondence between the parties as completing a memorandum
to satisfy the statute when coupled with the letter quoted above, but it was
*held* that, although such a coupling might have been resorted to if the defendant
in the subsequent letter had acknowledged the guaranty contained in the first
letter as having been made by him, this was not the case, and the subsequent
letter, which was not a memorandum in itself, did not help the matter.

Although where the words of a contract in writing are ambiguous the ex-
trinsic circumstances under which it was written may be shown by oral evi-
dence to enable the court to view the words in the same light that the parties
did, yet where the extrinsic facts are not in dispute, or after their existence
has been shown, the construction of the ambiguous instrument in the light of
these circumstances is for the court.

CONTRACT by a manufacturing corporation on an alleged guar-
anty by the defendant of the payment of the price for several
lots of castings furnished by the plaintiff to the Grip Coupling
Company, a corporation.   Writ dated February 24, 1914.

The declaration contained three counts, each alleged to be for
the same cause of action.   The only count relied upon by the
plaintiff at the trial was the third, which was as follows:

"Count Three.   And the plaintiff further says that relying
upon the guaranty of the defendant hereinafter set forth, it sold

and delivered to the Grip Coupling Co., a corporation having its usual place of business in said Ware, a lot of malleable iron castings, the kinds thereof and prices for the same, the total value thereof, and the dates of shipments to said Grip Coupling Co., being shown in the itemized account hereto annexed marked Exhibit 'A,' the said goods having been ordered by the said defendant as the treasurer of the said Grip Coupling Co., and the plaintiff further says that at the time the said goods were ordered as aforesaid and prior to the manufacture or delivery of any part thereof and as an inducement to, and the consideration for, the said sale and delivery, the said defendant guaranteed in writing the payment by the said Grip Coupling Co., of the goods so ordered by him for said company and made himself personally responsible therefor. A copy of the said writing with a copy of the reply thereto by the plaintiff being hereto annexed marked respectively Exhibit 'B' and Exhibit 'C.' And the plaintiff further says that demand for payment of the amount due for the said castings was duly made upon said defendant.

"Wherefore the plaintiff says the defendant owes it the said sum of six hundred and forty-four and 65/100 ($644.65) dollars, the value of the said malleable iron castings of which the defendant guaranteed payment."

Exhibit A contained the account, which was undisputed.

Exhibit B was as follows:

"June 25th, 1912.

"Arcade Malleable Iron Co.,
        Worcester, Mass.
                Attention H. P. Buckingham.
"Gentlemen:

In regard to my agreement to write you made when you were here in reference to your bills. I will personally see to it that your bill is met on the 15th of each month.

Please find enclosed statement as per your request.

"Yours very truly,
Grip Coupling Co.
By H. E. Jenks."

"H. E. J./P.

Exhibit C was as follows:

"June 26, 1912.

"Grip Coupling Co.,
      Ware, Mass.
            Attention Mr. H. E. Jenks, Treas.
"Gentlemen:
   We are in receipt of your letter of June 25th, with the enclosed statement of assets and liabilities as of May 1st, 1912. We also note that you will personally guarantee the account and see that our bill is met on the 15th day of each month and we thank you for this attention. We assure you that we will use every effort to give you good castings and will gladly do anything we can at any time to accommodate you.
   Again thanking you, we are

"Yours truly,
Arcade Malleable Iron Co.
H. Paul Buckingham,
"HPB/HIK                                President."

   The answer among other matters set up as a defence the statute of frauds as follows: "The defendant says that the action declared on in the plaintiff's declaration and in each count thereof is on account of a special promise alleged to have been made by the defendant to the plaintiff to answer for the debt of another; that such promise upon which said action is brought, or some memoranda or note thereof, is not in writing and signed by the defendant or by any person thereunto by him lawfully authorized, as required by the provisions of R. L. c. 74, § 1."
   In the Superior Court the case was tried before *King*, J. The items furnished and their value namely, $559.59, were not in dispute and it was agreed at the trial that, if the defendant was liable at all, he was liable for the sum named. The evidence, as admitted by the judge without objection, is described in the opinion.
   The additional correspondence relied on by the plaintiff, which is referred to in the opinion, was as follows:

"November 20, 1912.
"Mr. H. E. Jenks,
      Ware, Mass.
"Dear Sir:
   We have failed to receive the remittance from you this month

for your October account which amounts to $352.97. Our understanding was that this account should be paid promptly on the 15th of each month or in case it was not that we were to hold up shipments on castings and hold up the moulding of your orders until same was paid. This we do not like to do because we know it causes you a lot of inconvenience. Will you kindly give this matter your attention and forward us a check for the above amount.

"Yours truly,
Arcade Malleable Iron Co.
Alonzo G. Davis,
Treasurer."

"AGD/HIK
"H. E. Jenks,
  Upholsterer, Undertaker
and Funeral Director.
50 West Main Street.

Ware, Mass. November 29, 1912.

"Mr. H. Paul Buckingham,
    Worcester, Mass.
"Dear Sir:

  I have here a letter from Mr. Davis about payment of the Grip Coupling Co. bill. I hope you can arrange to send castings right along as usual and I will send you a check on the 15th of next month for everything. Mr. Merriam is to resign next Tuesday as manager, president and director. Then the people here are going to put in money to properly finance the business. If Mr. Davis cares to call up Mr. Hyde, he can confirm my statement, your money is sure, but collections have been very slow this month. I could send you a 30-day note if that will do you any good but I know Mr. Davis' attitude in regard to notes. Hoping you can see your way clear to accommodate the company for the next 15 days, I am

"Very truly yours,
H. E. Jenks."

The judge submitted the case to the jury upon the third count. His instructions to the jury are described in the opinion. The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The case was submitted on briefs.

*G. D. Storrs*, for the defendant.

*W. H. Whiting*, for the plaintiff.

LORING, J.   In the count on which the plaintiff corporation went to trial it alleged that "the said defendant guaranteed in writing the payment by the said Grip Coupling Co., of the goods so ordered by him for said company and made himself personally responsible therefor.   A copy of the said writing with a copy of the reply thereto by the plaintiff being hereto annexed marked respectively Exhibit 'B' and Exhibit 'C.'"   A facsimile copy of Exhibit "B" is set forth above.   Exhibit "C" was an unanswered letter from the plaintiff to the defendant dated June 26, 1912. We will deal with that later on.   At the trial evidence was introduced without objection on the defendant's part that at a meeting in June between two officers of the plaintiff corporation and the defendant (who was treasurer of the Grip Company) the defendant was told that unless he "would personally guarantee the account" of the Grip Company the plaintiff would not continue to sell to it and thereupon the defendant agreed to personally guarantee the account.   The defendant took the stand and denied that he ever agreed to guarantee the account of the Grip Company.   The Grip Company failed to pay for goods sold to it by the plaintiff in October and November, 1912, and this action was brought to recover from the defendant the sums so due.   The statute of frauds was pleaded in defence.

The letter of June 25 was put in evidence subject to the defendant's exception and at the close of the evidence the defendant asked the judge to rule: "That the instrument relied upon by the plaintiff is not a contract or promise of the defendant; neither is he a party thereto."   In his charge to the jury the judge explained the defence of the statute of frauds and left it to them to determine whether in signing the letter of June 25, 1912, by writing "Grip Coupling Co., By H. E. Jenks" the defendant intended to sign that letter in his own behalf or in behalf of the Company. In addition he gave this instruction: "I charge you, as requested by the plaintiff, these letters that were written subsequent to the conclusion of the promise, although not speaking of this alleged contract of guaranty in terms, may be coupled together if it appears they all had relation to it for the purpose of the written

memorandum made by the party to be charged." There were three letters in evidence in addition to the letter of June 25. They are set forth above. No exception was taken to the charge.

There was a good deal of confusion in the trial and the written arguments (on which the case has been submitted to us) are not free from it.

To begin with the case was not tried on the pleadings. The plaintiff counted on the letter of June 25 as a written contract or promise, not as a memorandum of an earlier oral contract or promise. Under the pleadings the evidence of the oral promise, made before June 25 was not admissible. But it was admitted without objection.

Whether the letter of June 25 was signed by Jenks personally or by the Grip Coupling Company, is a question of law. The plaintiff has contended that the words in the body of the letter "I will personally see to it that your bill is met on the 15th of each month" makes the signature "Grip Coupling Co.; By H. E. Jenks" an ambiguous one and, since that is so, the question whether the signature is the signature of the Grip Company or of the defendant is a question of fact for the jury. In his charge to the jury the presiding judge adopted that view. But that is not so. The plaintiff has relied in this connection upon the fact that the jury are rightfully called upon in cases where there is an ambiguity in a written contract and resort is had to extraneous circumstances under which it was made to determine its true construction. In such a case the jury have to pass upon the existence of the extraneous facts if their existence is in dispute. But where the existence of the extraneous circumstances is ascertained the question of the construction of the ambiguous contract interpreted in the light of these circumstances is for the court. In *Brown* v. *Fales*, 139 Mass. 21, 26, 27 it was said: "Where the language of a contract is equivocal in itself, or is made so by proof of extrinsic circumstances, so that it is susceptible of more than one construction, oral evidence is competent to show the situation of the parties, and to enable the court to be surrounded by the same circumstances as the parties were, and to look at the contract in the same light as they did, and thus to aid the court in applying and construing the language of the contract." The question was disposed of by the court as a question of law in

that case and also in *Bent* v. *Hartshorn*, 1 Met. 24 and in *Sullivan* v. *Arcand*, 165 Mass. 364.

The question whether the signature to the letter of June 25 is the signature of the Grip Company or of the defendant is a question of law to be determined in the light of all the facts in the case. Without so deciding, we assume in favor of the plaintiff that it must be decided in the light of the fact that the defendant had orally promised to guarantee the account (for on the evidence admitted without objection on the defendant's part the jury might have so found) and the fact that in the plaintiff's unanswered letter of June 26 it is stated that: "We also note that you will personally guarantee the account." Neither was admissible in evidence. Under a declaration counting on a written promise a previous oral promise is not admissible and an unanswered letter is not an admission and so is not competent evidence. *Callahan* v. *Goldman*, 216 Mass. 234, and cases there collected.

Why the defendant broke his oral agreement and sent a guaranty signed by the company, why he wrote the letter or had it written in one way and signed it in another way, and why he did not answer the letter of June 26 in which the plaintiff wrote him that "we also note that you will personally guarantee the account" we do not know. But it is the fact that he did break his oral promise; that he did write the letter in one way and sign it in another way and that he did not answer the plaintiff's letter of June 26 in which the plaintiff wrote that he (the defendant) in his letter of June 25 wrote that he would "personally" guarantee the account.

The signature "Grip Coupling Co., By H. E. Jenks" as matter of law is the signature of the company and not the signature of H. E. Jenks. No signature other than that used by the defendant could have made that plainer. The nearest cases in this Commonwealth are *Rice* v. *Gove*, 22 Pick. 158, *Bradlee* v. *Boston Glass Manufactory*, 16 Pick. 347.

The plaintiff has put great reliance upon *McCrea* v. *Bentley*, 154 N. Y. Supp. 174, a decision made by the Supreme Court of New York at an appellate term. The letter in that case was signed "Herbert Pearce Co., By L. H. Bentley, Sec. & Treas." But the letter in *McCrea* v. *Bentley* contained promises by the company as well as personal promises by Bentley. Where prom-

ises by the company were referred to in the body of the letter the word "we" was used. Where personal promises on the part of Bentley the secretary and treasurer were referred to in the body of the letter the words "the writer" and "he" and "I" were used. It was held that the letter was written and signed "in a dual capacity." That does not go as far as we are asked to go in the case at bar. There is nothing in the other cases relied on by the plaintiff which calls for notice.

We are of opinion that the ruling asked for and refused was right.

But the plaintiff has contended that the exception to the refusal to give the ruling ought not to be sustained on the ground that the jury might have found for the plaintiff under that part of the judge's charge in which he told them that the subsequent letters could be coupled together for the purpose of making out a written memorandum of the oral agreement testified to by the plaintiff's witnesses. The answer to this contention is that the subsequent letters signed by the defendant coupled together or coupled with those to which they were an answer do not amount to a written acknowledgment that he personally guaranteed the account. To satisfy the statute the memorandum must be "signed by the party to be charged." If in answer to the plaintiff's letter of June 26 the defendant had signed a letter acknowledging the correctness of the interpretation put by the plaintiff upon the defendant's letter of June 25 a memorandum which satisfied the statute would have been made out by the several letters coupled together. But there were no writings in evidence in the case at bar signed by the defendant which coupled together or which coupled with letters written or signed by the plaintiff to which they were answers amounted to a memorandum of the oral agreement put in evidence by the plaintiff. Without the letter of June 25 the statute was not satisfied. The defendant therefore had a right to have the judge tell the jury that as matter of law the written "instrument relied upon by the plaintiff is not a contract or promise of the defendant; neither is he a party thereto." It follows that this exception must be sustained.

It appears that the statute of frauds is an insuperable obstacle to the maintenance of the action. Under these circumstances we

are of opinion, acting under St. 1913, c. 716, that judgment should be entered for the defendant.

*Exceptions sustained.*

*Judgment for the defendant.*